Case 4:25-cv-04332   Document 14   Filed on 10/10/25 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
October 10, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERJES ORTEGA-AGUIRRE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-04332 |
| | § | |
| KRISTI NOEM, *et al.*, | § | |
| | § | |
| Respondents. | § | |

# ORDER

Before the Court are Petitioner Jerjes Ortega-Aguirre's Petition for Writ of Habeas Corpus (Doc. #1), Petitioner's Motion for Temporary Restraining Order and Request for Injunctive Relief (the "Motion") (Doc. #7), Respondents Kristi Noem, Grant Dickey, Raymond Thompson, Bret Bradford, and Pam Bondi's (collectively, "Respondents") Response (Doc. #9), and Petitioner's Reply (Doc. #10). The Court heard oral argument on Petitioner's Motion on September 26, 2025, and ordered further supplemental briefing from the parties (Doc. #11, Doc. #12, and Doc. #13). Having considered the parties' arguments and the applicable legal authority, the Court grants Petitioner's Motion in part and orders injunctive relief. Doc. #7.

**I.     Background**

    **a.     Factual Background**

Petitioner Jerjes Ortega-Aguirre is a citizen of Cuba. Doc. #7 at 4. He alleges "[h]e fled Cuba on or about June 15, 2021, due to harassment and threats he was receiving in Cuba because of his political opinion and past political activism." *Id.* He entered the United States near Del Rio, Texas on or about July 9, 2021, presented himself to border patrol authorities, and "was

subsequently placed in removal proceedings before the Houston Immigration Court." *Id.* The same day, the Houston Immigration Court released Petitioner on recognizance in accordance with § 236 of the Immigration and Nationality Act ("INA"), or 8 U.S.C. § 1226. Doc. #1, Ex. 1 at 19.

On July 25, 2022, Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal with the United States Citizenship and Immigration Services. Doc. #7 at 5. He subsequently filed the same Form I-589 with the Houston Immigration Court on August 17, 2023. *Id.* On June 11, 2024, Petitioner appeared before an Immigration Judge, who denied his claims for asylum and withholding of removal and ordered him removed to Cuba or, alternatively, to Mexico. *Id.*; Doc. #1, Ex. 1 at 35–38. On June 25, 2024, Petitioner filed a timely Notice of Appeal with the Board of Immigration Appeals ("BIA"). Doc. #7 at 6; Doc. #1, Ex. 1 at 40. His appeal remains pending before the BIA. Doc. #7 at 6. Immigration and Customs Enforcement ("ICE") took Petitioner into custody in August of 2025. *Id.* He has since been detained at the ICE Joe Corley Processing Center in Conroe, Texas. *Id.* Petitioner has no criminal history. *Id.*; Doc. #1, Ex. 1 at 51.

**b.    Procedural History**

Petitioner filed his Petition for Writ of Habeas Corpus on September 11, 2025, requesting that this Court "order [his] immediate release from custody" or, in the alternative, "order an individualized bond hearing before an Immigration Judge with the burden on the government to demonstrate by clear and convincing evidence that detention is necessary." Doc. #1 at 11. That same day, Petitioner filed his Motion for Temporary Restraining Order and Request for Injunctive Relief (Doc. #2), which was later amended to the pending Motion on September 23, 2025 (Doc. #7). On September 26, 2025, the Court heard oral argument on the Motion, during which Petitioner clarified that his principal request is immediate release from ICE custody. Per the

2

Court's instruction, the parties submitted supplemental briefing on the matter. Doc. #11, Doc. #12, and Doc. #13.

## II. Legal Standard

Petitioner must show the following to be entitled to injunctive relief: "(1) a substantial likelihood that [Petitioner] will prevail on the merits; (2) a substantial threat that irreparable injury will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to [Respondents]; and (4) that granting the preliminary injunction will not disserve the public." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Because a preliminary injunction is "an extraordinary remedy," "[i]t should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

## III. Analysis

### a. Likelihood of Success on the Merits

Petitioner seeks relief on two grounds: (1) Respondents have unlawfully detained him in violation of the INA; and (2) Respondents have unlawfully detained him in violation of his due process rights. Doc. #1 at 7–9. Respondents contend that because Petitioner is subject to mandatory detention and is lawfully detained, he cannot show a likelihood of success on the merits of either claim. Doc. #9 at 3–5. The Court begins with the issue of mandatory detention before turning to whether Petitioner is lawfully detained.

### 1. Mandatory Detention

As an initial matter, Petitioner is not subject to mandatory detention under 8 U.S.C. § 1231, which provides for the detention and removal of aliens with final orders of removal. Doc. #9 at 4; 8 U.S.C. § 1231(a)(1)–(2). Because Petitioner's appeal with the BIA remains pending, the

"removal period" under § 1231, which triggers mandatory detention, has not yet begun. Doc. #7 at 5; *see* 8 C.F.R. § 1003.6(a) (requiring that an immigration judge's decision to remove a non-citizen be stayed "while an appeal is pending").

The question, then, is whether any provision of the INA mandates Petitioner's detention while his appeal is pending before the BIA. Respondents contend that Petitioner is detained under INA § 235(b), 8 U.S.C. § 1225(b)(2), "which subjects him to mandatory detention." Doc. #9 at 4. Conversely, Petitioner argues Respondent's detention authority derives from INA § 236, 8 U.S.C. § 1226(a). Doc. #10 at 2. Under § 1225(b)(2), detention is *mandatory* unless an immigration officer determines an "applicant for admission" is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2).

However, § 1226(a) provides that aliens *may* be detained pending a removal decision. *Id.* § 1226(a). Here, the Court finds that Petitioner has adequately shown that § 1226(a) governs his detention. As Petitioner points out, § 1225(b)(2) "applies to 'applicants for admission' encountered at the border or ports of entry." Doc. #10 at 2. But Petitioner is not an "applicant for admission" under § 1225(b)(2). Indeed, Petitioner has lived in the United States for more than three years, appeared for all required ICE appointments, applied for asylum, and been granted employment authorization. Doc. #7 at 5 and Doc. #10 at 2; *see Tocagon v. Moniz*, No. 25-CV-12453, 2025 WL 2778023, at *3 (D. Mass. Sept. 29, 2025) (finding an illegal alien already residing in the United States was subject to § 1226(a)'s "discretionary framework" rather than § 1225(b)(2)'s mandatory detention scheme); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765, at *7 (E.D.N.Y. Sept. 29, 2025) (same); *Barrios v. Shepley, et al.*, No. 1:25-CV-00406, 2025 WL 2772579, at *10 (D. Me. Sept. 29, 2025) (same); *Valencia Zapata v. Kaiser*, No. 25-CV-07492, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (same); *Lepe v. Andrews*, No. 1:25-

CV-01163, 2025 WL 2716910, at *4–9 (E.D. Cal. Sept. 23, 2025) (same); *Vazquez v. Feeley*, No. 2:25-CV-01542, 2025 WL 2676082, at *16 (D. Nev. Sept. 17, 2025) (same). For these reasons, the Court concludes Petitioner has a strong likelihood of success on the merits of his claim that his detention falls under the scope of § 1226(a), which permits but does not compel detention.

### 2. Lawful Detention

Petitioner next argues that his even if Respondent have statutory authority to detain him under § 1226(a), his detention must still comply with the requirements of due process. Doc. #7 at 9–10. Accordingly, the Court must assess whether Petitioner has adequately shown his detention is unlawful because it violates due process. As an initial matter, it is well established that due process "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has held that "indefinite detention of an alien" raises "a serious constitutional problem." *Id.* at 690. Furthermore, in *Zadvydas*, the Supreme Court recognized two justifications for indefinite civil detention of aliens: (1) ensuring appearance at future immigration proceedings and (2) preventing danger to the community. *Id*; *see also Vazquez Barrera v. Wolf*, 455 F. Supp. 3d 330, 338 (S.D. Tex. 2020) ("Where the government is holding the detainee in conditions that amount to punishment, and those conditions do not reasonably relate to a 'legitimate, non-punitive governmental objective,' such conditions violate the detainee's due process rights." (quoting *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020))). Here, the Court finds that Petitioner is likely to prevail on the merits of his due process claim because he "has been detained since August of 2025 without any individualized assessment of flight risk or

dangerousness."[1] Doc. #7 at 10. Moreover, Petitioner has no criminal history, "has demonstrated no conduct indicating that he is a threat to the United States," and appeared for all ICE appointments before he was detained. *Id.* at 4, 6; Doc. #1 at 4–6. As such, the Court finds Petitioner is likely to succeed on the merits of his claim that his continued detention is unlawful.

### b. Irreparable Harm

Petitioner adequately demonstrates he will suffer immediate and irreparable harm if removal occurs. Specifically, he asserts that if removed to Cuba, he "would face immediate harm from persecution by members of the Cuban government due to his past political activism." Doc. #7 at 7. And if deported elsewhere, Petitioner would nevertheless be "forced to seek safety in an unknown country where he has neither the protection of citizenship nor protection from being subsequently removed to Cuba." *Id.* Likewise, Petitioner is irreparably deprived of his liberty while detained in ICE custody. *See Rodriguez-Castellon v. Tate, et al.*, No. 4:25-cv-4270, Doc. #17 at 3 (S.D. Tex. Sept. 24, 2025) (finding the same). The Court therefore concludes Petitioner will suffer irreparable harm if injunctive relief is not granted.

### c. Balance of Equities

The third factor—whether Petitioner's threatened injury outweighs Respondents' threatened harm—also favors injunctive relief. As explained above, Petitioner's continued detention causes him grave and irreparable harm. Furthermore, Petitioner's release from custody with certain conditions guaranteeing his continued compliance with legal requirements causes, at most, *de minimis* injury to Respondents. *Rodriguez-Castellon*, No. 4:25-cv-4270, Doc. #17 at 3;

---

[1] Respondents note "ICE has determined that Petitioner is a potential flight risk," Doc. #9 at 3. ICE's determination, however, claims that "[c]ontinued detention ensures [Petitioner's] compliance of [sic] with a final order." Doc. #9, Ex. 1. As explained, however, Petitioner is not subject to a final removal order because his BIA appeal is pending. 8 C.F.R. § 1003.6(a).

*see Vazquez Barrera*, 455 F. Supp. 3d at 339 ("ICE has many other means besides physical detention to monitor noncitizens and ensure that they are present at removal proceedings and at time of removal, such as GPS monitoring and routine check ins."). Thus, Petitioner has shown his threatened injury outweighs any harm Respondents may suffer if he is released from custody.

### d. Public Interest

Finally, the public-interest factor also weighs in favor of Petitioner. Respondents contend "there is a strong public interest in ensuring that immigration laws are followed." Doc. #9 at 8. The Court agrees. If the BIA ultimately determines Petitioner is subject to removal, Respondents will have the opportunity to effectuate that removal. Currently, however, Petitioner is not subject to a final removal order. Doc. #10 at 2. Moreover, Respondents offer no evidence that Petitioner's continued presence in the United States poses any threat to public safety or national security. Consequently, there is no public interest served by continuing to detain Petitioner while his BIA appeal is pending.

## IV. Conclusion

In conclusion, the Court finds all four factors weigh in favor of granting Petitioner injunctive relief. Accordingly, Petitioner's Motion for Preliminary Injunction is GRANTED. Doc. #7. Moreover, Petitioner's Motion for Temporary Restraining Order is DENIED as MOOT. Doc. #7. It is hereby ORDERED that:

1. Respondents shall effect Petitioner's immediate release from custody. Petitioner shall be released in a public place within the Southern District of Texas, and his counsel shall be given notice of the time and place of his release;

2. Petitioner shall comply with all reporting requirements set by ICE, as well as ankle monitoring at the discretion of ICE, while his appeal to the BIA is pending;

3. Respondents, their agents, employees, and successors are restrained and enjoined from removing Petitioner from the United States while this injunction remains in effect;

4. Respondents shall notify all relevant personnel that Petitioner is not to be removed from the United States while this Order remains in effect; and

5. This Order may be served by facsimile, email, or any other means reasonably calculated to provide immediate notice.

It is so ORDERED.

OCT 1 0 2025
Date

The Honorable Alfred H. Bennett
United States District Judge